**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|                          |     |                            |
|--------------------------|-----|----------------------------|
| MARIA BRANCO,            | :   |                            |
|                          | :   |                            |
|             Plaintiff,   | :   | Civ. No. 08-784 (GEB)      |
|                          | :   |                            |
|        v.                | :   |                            |
|                          | :   |                            |
| COMMISSIONER OF          | :   |                            |
| SOCIAL SECURITY,         | :   | **MEMORANDUM OPINION**     |
|                          | :   |                            |
|            Defendant.    | :   |                            |

**BROWN, Chief Judge**

This matter comes before the Court upon the appeal of Maria Branco ("Plaintiff") from the final decision of the Commissioner of Social Security ("Commissioner") that denied Plaintiff disability benefits under the Social Security Act ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g), and has considered the parties' submissions without oral argument pursuant to Federal Rules of Civil Procedure 78.  For the reasons that follow, the Court will affirm in part and vacate in part the final decision of the Commissioner and remand for further administrative proceedings.

**I.     BACKGROUND**[1]

---

[1]     The Commissioner "incorporates the procedural history and the statement of facts set forth in the ALJ's decision and in plaintiff's brief, to the extent those facts do not contradict the facts recited in this brief."  (Opp'n Br. at 1.)  As such, this background section summarizes the facts set forth by Plaintiff in his complaint and brief, with references to the administrative record where appropriate.

Plaintiff stated that she was 52 years of age when the complaint was filed on February 13, 2008.  Compl. ¶ 4.   Plaintiff is an immigrant who received a fourth grade education in Portugal.  *Id.*  Plaintiff worked as a sewing machine operator and house cleaner prior to commencing this litigation.  *Id.*

On March 5, 2005, Plaintiff filed for disability insurance benefits and supplemental security income benefits under the Act, alleging that she was disabled as of July 8, 2004 due to these medical impairments.  Pl.'s Br. at 1.  The Social Security Administration denied Plaintiff's initial application as well as on reconsideration.  *Id.*  Upon Plaintiff's request, a hearing was held on August 21, 2007 before an Administrative Law Judge ("ALJ").  *Id.*  After the hearing, the ALJ issued a decision denying Plaintiff's application.[2]  *Id.*  Plaintiff sought review of the ALJ's decision from the Appeals Council and that request was denied.  *Id.*  With that denial, the ALJ's decision became the final decision of the Commissioner in Plaintiff's case.  On February 13, 2008, Plaintiff appealed the Commissioner's final decision in this Court.  Compl.  In his submissions, Plaintiff argues that the Commissioner's decision is erroneous because the Commissioner's denial is not supported by substantial evidence.  *Id.*  Plaintiff asks this Court to reverse the Commissioner's decision and grant her benefits or, in the alternative, reverse the Commissioner's decision and remand for additional proceedings.  *Id.*

In an answer and opposition brief, the Commissioner denies all of Plaintiff's allegations and argues that the Commissioner's decision is supported by substantial evidence, is conclusive, and must be affirmed.  Answer, ¶¶ 5-6; Def.'s Br. at 1 [Docket Nos. 5, 13].

---

[2]       The Court notes that page 3 of the ALJ's decision as well as certain pages of other documents are missing from the copy of the Administrative Record submitted by Defendant. *See* A.R. 14, 16, 136, 138.  On remand, the Court orders Defendant to supplement the Administrative Record to include these and any other missing pages.

## II.    DISCUSSION

### A.    Legal Standard

A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirements.  A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exist for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability.  20 C.F.R. 404.1520 (2005).  In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. 404.1520(a)(4)(i).  If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied.  *Id.*  If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments."  20 C.F.R. 404.1520(a)(4)(ii).  A claimant who does not have a "severe impairment" is not disabled.  *Id.*  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1

3

of subpart P ("the Listing").  20 C.F.R. 404.1520(a)(4)(iii).  If so, the claimant is conclusively presumed to be disabled, and the evaluation ends.  *Id.*; 20 C.F.R. 404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("Residual Functional Capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past ("Past Relevant Work").  20 C.F.R. 404.1520(a)(4)(iv).  If the claimant is found capable of performing his previous work, the claimant is not disabled.  *Id.*  If the claimant is no longer able to perform his prior line of work, the evaluation must continue to the last step.  The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy.  20 C.F.R. 404.1520(a)(4)(v).  The ALJ must consider the RFC assessment, together with claimant's age, education, and past work experience.  20 C.F.R. 404.1520(g).  Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing his past work or some other type of work in the national economy because of his impairments.

The application of these standards involves shifting burdens of proof.  The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  If the claimant is unable to meet this burden, the process ends, and the claimant does not receive benefits.  *Id.*  If the claimant carries these burdens and demonstrates that the impairments meet or equal those within the Listing, claimant has satisfied his burden of proof and is automatically entitled to benefits.  *Id.*  If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step

4

four that the impairment prevents him from performing his past work." *Id.* Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why he is unable to perform such work. If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Id.* The step five analysis "can be quite fact specific." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 126 (3d Cir. 2000).

In addition, the Commissioner's decisions as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." *Knepp v. Apfel,* 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir. 1999); *see also* 42 U.S.C. § 405(g). Substantial evidence means more than "a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer,* 186 F.3d at 427 (quoting *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995) (further citation omitted)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." *Fargnoli v. Halter,* 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999)).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983) (emphasis in original). The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits. *Gober v. Matthews,* 574 F.2d 772, 776 (3d Cir. 1978) (citation omitted). As the Third Circuit has held, access to the ALJ's reasoning is essential to a meaningful review of the ALJ's decision. *Fargnoli,* 247 F.3d at 42. Nevertheless, the district court is not "empowered

5

to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler,* 743 F.2d 1002, 1007 (3d Cir. 1984)).

    **B.**    **Application**

        **1.**    **The ALJ's Properly Concluded at Step Two that Plaintiff's Impairments Were Severe.**

In step two, the ALJ is required to evaluate whether the claimant has an impairment or a combination of impairments that are severe. 20 C.F.R. 404.1520(a)(4)(ii); 20 C.F.R. 416.920(a)(4)(ii).  In the instant case, the ALJ stated:

> The claimant has the following severe impairments: left knee pain, status post surgery; neck pain; lower back pain; right carpal tunnel syndrome; hypertension; diabetes and obesity.

A.R.  at 22.

Plaintiff first argues that the ALJ's step two "description of plaintiff's severe impairments minimizes the actual impact of those impairments."  Pl.'s. Br. at 15.   Specifically, Plaintiff stresses that neck pain, lower back pain, and knee pain are merely "symptoms of severe impairments."  *Id*.  Therefore, Plaintiff is not disputing the ALJ's factual findings that Plaintiff has severe impairments.  Rather, Plaintiff only disagrees with the ALJ about the definition of "severe impairments."  According to Plaintiff, instead of suffering from neck pain, "plaintiff suffers two herniated discs which cause pain and limitation of motion in her neck, along with cervical facet syndrome."  *Id*.  Essentially, Plaintiff is arguing that the underlying medical conditions that cause the symptoms should be recognized as "severe impairments."  Similarly, Plaintiff argues that "back pain" and "knee pain" are not proper characterization for her other impairments. Pl.'s Br. 14-16.

This Court, however, does not find the distinction as to how to describe "severe impairment" to be a material factor in making the decision in step two.  The goal of the step two analysis is to determine whether severe impairments exist to make the claimant "disabled." 20 C.F.R. 404.1520(a)(4)(ii); 20 C.F.R. 416.920(a)(4)(ii).  The ALJ's descriptions, such as "neck pain, back pain, and knee pain," are more directly related to the functional analysis that is required pursuant to the regulations promulgated under the Act.  *Id*.  By examining the physical ailments of the claimant and how treatment would improve these ailments, the ALJ can make a better reasoned decision as to how these conditions may affect Plaintiff's ability to "engage in substantial[ly] gainful activity." 42 U.S.C. § 423(d)(1)(A).  Plaintiff asserts emphatically that: "[P]laintiff does not suffer 'neck pain', plaintiff suffers two herniated discs."  Pl.'s Br. at 15. The fact is that Plaintiff does suffer from neck pain, which may have been caused by herniated discs.  A.R. at 175.  Similarly, Plaintiff's attack on the ALJ's expression of "back pain" and "knee pain" is unfounded.

Plaintiff also questions the ALJ's decision regarding the other four severe impairments: right carpal tunnel syndrome; hypertension; diabetes and obesity.  Pl.'s Br. at 17.  Again, Plaintiff is not disputing the ALJ's basic decision that these impairments are severe.  Instead, Plaintiff questions why the ALJ termed these impairments as "severe" but then failed to attribute which of Plaintiff's restrictions are attributable to them.  *Id*. at 16.  However, neither the Act, the regulations promulgated thereunder, nor any case law this Court has found requires an ALJ to specifically attribute each of a plaintiff's severe impairments to a particular restriction on a plaintiff's ability to work.  As such, Plaintiff's argument is not persuasive.

7

In addition, Plaintiff casts doubt as to why Plaintiff's osteoarthritis, osteoporosis, and right shoulder impingement syndrome are not labeled as severe impairments. Pl.'s Br. 16-17. As pointed out by Defendant's brief, these conditions may cause neck and back pain, which are included in the ALJ's findings as severe impairments.  A.R.  at 22.  More significantly, Plaintiff bears the burden of proof in step two to show that he/she has a "medically severe impairment or combination of impairments."  *See Bowen*, 482 U.S. at 146 n. 5.  Plaintiff fails to provide evidence that these conditions are qualified as severe impairments under the Act.  Pl.'s Br. 16-17.  Consequently, Plaintiff's appeal with respect to the Commissioner's decision at step two is affirmed.

> **2.     The ALJ Properly Compared Plaintiff's Impairments to the Listing at Step Three of the Sequential Evaluation Process.**

The ALJ is required under the Act to compare the severe impairments identified in the second step of the sequential evaluation to the official Listing, which contains certain ailments that are considered incapacitating.  20 C.F.R. 404.1520(a)(4)(iii); 20 C.F.R. Subpart P, Appendix 1. Plaintiff challenges the ALJ's finding regarding her "knee pathology," which was found to be insufficient to meet the Listing requirements because the ALJ believe that Plaintiff's knee pain can be treated and "the record does not document the inability to ambulate effectively."  A.R.  at 22.   Here, Plaintiff argues that the ALJ failed to consider a caution from Dr. Bagner, a social security consultant who evaluated Plaintiff, as to Plaintiff's tentative nature when she ambulates. *Id*. at 138.  This Court, however, will not disturb the ALJ's finding on this issue because it is supported by substantial evidence.   The ALJ observed that Plaintiff's knee conditions improved after treatment and she made a quick recovery after surgery.  *Id*.  Moreover, the ALJ used

Plaintiff's trips to Europe as an indication that she could ambulate effectively. *Id.*  The evidence the ALJ used is substantial and this Court is not at liberty to alter the conclusion. *Fargnoli*, 247 F.3d at 38.

Plaintiff also argues that the ALJ failed to combine her impairments and compare the combination to the Listing.  Pl.'s Br. 17-19.   Plaintiff notes that, under the Act:

> If you have a combination of impairments, no one of which meets a listing (see § 404.1525(c)(3)) , we will compare your findings with those for closely analogous listed impairments.  If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

Pl.'s Br. at 19 (citing 20 C.F.R. 404.1526(b)(3)).  Moreover, to support her challenge, Plaintiff cites *Torres v. Commissioner*, 279 Fed. Appx. 149 (3d Cir. 2008), in which the United States Court of Appeals for the Third Circuit held that the ALJ failed to "consider [the claimant's] impairments in combination when determining medical equivalence" and required the ALJ to consider the entirety of the claimant's medical conditions in making such a determination.  Pl.'s Br. at 19-20 (quoting *Torres*, 279 Fed. Appx. at 152).  It should be noted that *Torres* is not precedential and this Court does not identify any precedential authority specifically addressing whether or not the ALJ is required to combine the impairments in analyzing Plaintiff's claim. Nevertheless, even if this Court agreed with Plaintiff that the ALJ was required to "combine and compare" Plaintiff's impairments in determining medical equivalence under the Act, such a determination is not necessary in the instant case because  the Court concludes that the ALJ did consider the combination of Plaintiff's impairments in making his determination.  Pl.'s Br. at 18; A.R. at 22-24.

The ALJ stated that he did consider whether the combination of Plaintiff's impairments met or medically equaled one of the listed impairments.  A.R. at 22. For example, the ALJ stated that "even when obesity is considered in combination with the claimant's other impairments, she does not meet or equal any of the listings." *Id*. at 24.  Plaintiff fails to explain how this analysis is inadequate and why the ALJ's analysis is unreasonable.  The Court cannot interfere with the ALJ's factual findings if the conclusions are supported by substantial evidence. *Fargnoli*, 247 F.3d at 38.  Therefore, the Commisioner's decision with respect to step three is affirmed.

### 3.     The ALJ's Decision Regarding Plaintiff's Residual Functional Capacity is Supported by Substantial Evidence.

In the fourth step of the sequential evaluation process, the ALJ should assess the claimant's residual functional capacity ("RFC") and whether claimant can still do her Past Relevant Work.  20 C.F.R. 404.1520(a)(4)(iv).  RFC is defined as "the most you can still do [in a work setting] despite your limitations."  20 C.F.R. 404.1545(a).  Again, as to such factual findings, this Court will not challenge the ALJ's determination if it is supported by substantial evidence.  *Fargnoli*, 247 F.3d at 38.

Plaintiff first argues that the ALJ failed to adequately consider Plaintiff's subjective complaints of pain.  Pl.'s Br. 22-29.  It is not disputed that subjective complaints should be given serious consideration when Plaintiff's medical condition can reasonably produce such complaints.  *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981).  However, the ALJ did consider Plaintiff's statements about her pain and suffering and made extensive reference to Plaintiff's complaints, her daily activity and her treatment history in his decision.  A.R.at 24-26. Specifically, the ALJ noted that the Plaintiff indicated that: (1) she felt pain in her neck, back,

10

thumb, and knee; (2) she had difficulty with stairs; (3) she can walk 20 minutes but gets dizzy when she stands; (4) and she feels pain when she has to stand.  *Id*. at 16, 24-26.  The ALJ also examined the medical evidence that may produce Plaintiff's complaints.  *Id*. at 24-26.  For example, the ALJ stated that "[t]he claimant has right carpal tunnel syndrome and testified to pain in her right thumb." *Id*. at 25.  However, the ALJ also noted that "[t]he claimant's right carpal tunnel syndrome and arthritis of the thumbs does not seem to dramatically affect her daily activities. The claimant is able to drive, take care of her children, and travel to Europe." *Id*. at 26.  As such, the ALJ's decision regarding Plaitntiff's RFC is supported by substantial evidence.

The ALJ also cast doubt on Plaintiff's credibility. *Id*. at 24.  Specifically, the ALJ found that Plaintiff's testimony regarding her previous work is not consistent with her earning record. *Id*.  The ALJ noted that Plaintiff's yearly income varies dramatically from year to year and is generally lower than the amount the Plaintiff would have received if she worked full time.  *Id.* at 24.  The ALJ concluded that "either her testimony was not true or she was working off the books." *Id*. at 24.  However, the Court finds no evidence in the record to indicate that Plaintiff claimed she worked full time during the relevant time period.  As such, the ALJ failed to consider the possibility that Plaintiff was only able to find sporadic work during the period which she termed her "working years."  In addition, the ALJ questioned the inconsistencies in Plaintiff's statements about her English abilities.  *Id*. at 24.  Plaintiff stated that she could speak some English but not read English. *Id.* at 24.  The ALJ noted that, in her application, Plaintiff stated that she could read and write English. *Id.* at 24.  Plaintiff is a naturalized citizen.  The process of naturalization requires the applicant to "demonstrate an understanding of the English

language, including an ability to read, write, and speak words in ordinary usage in the English language." 8 U.S.C. § 1423(a)(1).   Plaintiff, however, claimed that she could speak but not read English.  A.R. at 195-96.  Although there are certain exceptions to the naturalization requirements, Plaintiff does not fit into any of them.  8 U.S.C. § 1423(b); see also Def.'s Br. at 15.  The inconsistency of Plaintiff's status and her statements with respect to this issue is evident and as such the ALJ's doubts regarding Plaintififf's credibility are justified.  These concerns, coupled with thee ALJ's extensive reference to Plaintiff's testimony and statements, indicate that the ALJ seriously considered the evidence put with respect to Plaintiff's subjective complaints of pain.

Plaintiff further asserts that the ALJ "offered no medical or evidentiary foundation for its RFC determination."  Pl.'s Br. at 30.  The Court disagrees.  The ALJ concluded that Plaintiff can do light work.  A.R.  at 24.   To support this decision, the ALJ extensively reviewed the medical evidence and experts' opinion in the record.  *Id.* at 24-26.  For example, with respect to Plaintiff's knee pain, the ALJ provided substantial evidence for his determination that Plaintiff's knee impairment is not disabling.  *Id*.  The ALJ examined Plaintiff's history of treatment before and after her knee surgery.  *Id*.  The ALJ further pointed out that Plaintiff suffered an ACL tear demonstrated by MRI in 2004.  *Id*.  However, as the ALJ also noted, Plaintiff only had knee surgery in April 2006, almost two years after the diagnosis.  A.R.  at 25.   Moreover, the ALJ considered the Plaintiff's treating surgeon's statements that Plaintiff's knee condition improved after treatment.  *Id*.  The ALJ also stated that Plaintiff traveled to Europe in 2005, further demonstrating that she could ambulate even before the surgery.  *Id*.  The ALJ also reasoned that

the evidence showed that, after her surgery, Plaintiff's condition improved further.  *Id*.  From the above analysis, the ALJ concluded that Plaintiff's knee impairment is not disabling.  As such, this Court concludes that the ALJ's decision is supported by substantial evidence.  The Court will not go through all the details of the ALJ's evaluation regarding Plaintiff's specific impairments, such as neck pain, back pain, carpal tunnel syndrome and arthritis of the thumbs but concludes that the ALJ's analysis of these impairments are similarly supported by substantial evidence.   As a general assessment, the ALJ stated that:

> In the present case, the claimant has been able to perform the activities of daily living and function despite the combined effects of her impairments. For example, the disability interviewer observed no difficulties and noted that the claimant was able to carry two large bags without apparent problems.

*Id*. at 26.   As such, the ALJ's analysis of the overall effect of the impairments is reasonable.

In addition to addressing the evidence that supports his determination, the ALJ also must explain why he rejected the evidence opposing his finding.  *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Here, the ALJ assessed Dr. Daknis' statements that Plaintiff cannot do housecleaning because of her back.  A.R. at 26.   The ALJ noted that Dr. Daknis's opinion does not indicate that Plaintiff was totally disabled.  *Id*.  Moreover, the ALJ reasoned that Plaintiff was advised in May 4, 2004 that she had no reason for disability and that there is "nothing in the record to indicate that the claimant's back condition worsened subsequent to May 4, 2004."  *Id*. As such, the ALJ stated that Dr. Atienza's assessment that Plaintiff could do light work as defined under the Act "deserves greater weight" under the Act.  *Id*.

The Court concludes that this analysis is sufficient explanation for why opposing evidence was rejected under *Cotter*.  Although the ALJ's comparison of Dr. Atienza's opinion

against Dr. Daknis' assessment of Plaintiff's abilities could have been more comprehensive, it is important to note that Dr. Daknis' opinion that Plaintiff could not work as a housekeeper does not contradict the ALJ's ultimate finding that Plaintiff was capable of performing light work as a sewing machine operator. *Id.*; *see also Landeta v. Comm'r of Soc. Sec.*, 191 Fed. Appx. 105, 110 (3d Cir. 2006) (holding that ALJ's failure to specifically mention doctor's findings of certain of plaintiff's limitations does not afford plaintiff relief under *Cotter* because the ALJ's decision does not conflict with doctor's ultimate conclusion).

In light of the foregoing, the ALJ provided substantial evidence for his analysis regarding Plaintiff's RFC. The Commissioner's decision regarding Plaintiff's RFC is affirmed.

### 4. The ALJ Failed to Provide Substantial Evidence for His Decision that Plaintiff is Capable of Resuming Past Work as a Sewing Machine Operator.

After the evaluation of the RFC, in the subsequent analysis of step four, the ALJ is required to compare the claimant's RFC with the physical and mental demands of claimant's relevant past work. 20 C.F.R. 404.1520(f); 20 C.F.R. 404.1560(b); 20 C.F.R. 416.920(f); 20 C.F.R. 416.960(b). Specifically, the rules indicate that:

> We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 416.965(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity.

20 C.F.R. 416.960(b)(2). The ALJ does not need to conclude that a claimant can do her past work as in exactly the same manner as he or she did it before. Rather, the ALJ must instead

14

determine whethert a claimant can do her past work as it is "generally performed in the national economy."  20 C.F.R. 404.1560(b)(2); 20 C.F.R. 416.960(b)(2).

Here, in the first part of the step four analysis, the ALJ reached the conclusion that Plaintiff has the RFC to do light work.  A.R. at 25-26.  In the second part of the analysis, the ALJ found that Plaintiff was able to perform her old job as a sewing machine operator, which is designated as light work by the Dictionary of Occupational Titles ("DOT").  *Id.* at 26.  To support his conclusion, the ALJ cited one definition for "sewing machine operator" found at DOT 787.682-066. A.R. However, this is only one of eleven "sewing machine operator" positions listed in the DOT.  *See* DOT §§ 787.682-066, 787.682-046, 780.682-010, 787.682-074, 787.682-050, 787.682-014, 787.682-054, 787.682-058, 787.685-034, 787.685-030, 787.685-118.  In his decision, the ALJ did not give any reason why he chose to use definition DOT 787.682-066 over the eleven others. Of these eleven "sewing machine operator" definitions, only one is said to require a medium exertional level, DOT 787.682-014, while the other ten definitions require light exertion. *See e.g.* DOT 787.682-066, 787-682.046.   Nevertheless, the ALJ did not inquire about the specifics of Plaintiff's past work, nor did he present vocational expert testimony regarding how a job as a sewing machine operator is performed in the national economy.  Instead, the ALJ based his determination that Plaintiff was capable of resuming Past Relevant Work solely on this one seemingly arbitrary DOT designation.  A.R. at 26-27.  As such, this Court concludes that the ALJ failed to provide substantial evidence for his decision that Plaintiff was able to do her Past Relevant Work.  The Court will therefore reverse the Commissioner's decision with respect to this issue.

### C.       Remand Is Appropriate

An award of benefits under the Act is predicated upon a finding that there are no jobs in the national economy that a claimant can perform as a result of his or her impairments.  20 C.F.R. 404.1560(b)(2); 20 C.F.R. 416.960(b)(2).  Because the ALJ failed to appropriately assess Plaintiff's ability to do Past Relevant Work, it appears that the administrative record is not fully developed on this issue, and therefore that this Court does not have sufficient information to decide whether Plaintiff is entitled to benefits under the Act.  As such, an award of benefits to the Plaintiff by this Court is inappropriate at this time. Rather, the Court will remand for further administrative hearings consistent with this opinion.

## III.     CONCLUSION

For the foregoing reasons, the Court will affirm in part and deny in part the final decision of the Commissioner that denied Plaintiff benefits under the Act, will vacate the final decision of the Commissioner that denied Plaintiff benefits under the Act, and remand this case for further administrative proceedings consistent with this Memorandum Opinion, and order this case closed.  An appropriate form of order accompanies this Memorandum Opinion.

Dated: July 8, 2009

                                    /s/ Garrett E. Brown, Jr.
                                GARRETT E. BROWN, JR., U.S.D.J.

16